CHARLES WILLIAMS, Plaintiff in Error, Defendant Below, Appellant, v. AUDREY CHITTICK, Defendant in Error, Plaintiff Below, Appellee, and JOHN KOZELSKI, a Defendant Below.

(*March* 7, 1958.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Everett F. Warrington* for appellant, one of defendants below.

*James M. Tunnell, Jr.* (of the firm of Tunnell and Tunnell) for Audrey Chittick, appellee, plaintiff below.

Supreme Court of the State of Delaware, No. 37, 1957.

BRAMHALL, J.:

This appeal relates to an action by a widow for the wrongful death of her husband. 10 *Del. C.* § 3704(b). The plaintiff is Audrey Chittick, appellee, widow of John H. Chittick, deceased. The defendants below are Charles Williams, appellant, and John Kozelski, appellee. Plaintiff's husband was killed in a collision between the automobile operated by Williams and the automobile operated by Kozelski in which the deceased was riding.

The substantial facts are as follows: On May 14, 1955, at approximately 9:05 o'clock p. m. (E.D.S.T.), plaintiff's deceased was riding on the front seat, on the right-hand side, of an automobile operated by defendant Kozelski in a northerly direction on State Highway 13, at a point approximately one mile east of the limits of the City of Seaford, Sussex County, Delaware, where said State Highway 13 intersects with State Highway 535. Deceased and Kozelski were returning from a fishing trip near Ocean City, Maryland. The automobile in which they were riding belonged to the employer of deceased, it having been loaned by the employer to deceased for the trip. Kozelski and deceased

had gone on a number of fishing trips together. It was always understood between them (including the trip in question) that each would drive the car at different periods—during which time the person driving would be in charge of the automobile—and that the expenses of the trip would be divided equally between them.

On the same evening Williams was operating an automobile in a westerly direction on State Highway 535, approaching its intersection with State Highway 13. A collision occurred between the two automobiles at said intersection at a point 5′6″ west of the easterly edge of the paved portion of the northbound section of State Highway 13. The impact on the Kozelski car was on the right side, beginning at a point immediately to the rear of the right front door, and extending to the front bumper. The impact on the Williams car was at the front.

State Highway 13 is a dual highway running generally north and south, with two 24-foot paved panels divided by a grass center strip. The legal limit of speed thereon is 55 miles an hour. State Highway 535 is a two-lane macadam surfaced road running generally east and west and is controlled by stop signs at this intersection, the one on the east side being 15′9″ from the easterly edge of the paved portion of the northbound section of State Highway 13.

Kozelski was driving at the rate of from 50 to 55 miles per hour. The lights of his car were on. He did not reduce his speed at the intersection or change the direction of his car for the purpose of avoiding the accident. There is some question as to whether he saw the Williams car approaching the intersection, but it is not disputed that Kozelski did not see it near the intersection until immediately before the collision. Although it was an hour after sunset and was "dusk", neither Kozelski nor a witness stopped on State Highway 535 on the west side of State Highway 13, facing east—the direction from which Williams' car was coming—saw any lights approaching from the east.

Williams testified that he had stopped his car at the intersection a little past the stop sign. He was not certain whether or not his lights were on. At the opening of the trial, Williams' counsel formally admitted that Williams was guilty of negligence contributing to the accident.

At the conclusion of all the evidence, defendant Kozelski moved for a directed verdict on the grounds that plaintiff had failed to show any evidence of negligence on his part and that, assuming such negligence, plaintiff had failed to show that it was one of the proximate causes of the accident. The trial judge granted the motion of Kozelski and instructed the jury to find a verdict in his favor. Since the result of the trial judge's ruling was to deprive Williams of his only defense—the alleged negligence of Kozelski contributing to the accident—the trial judge also instructed the jury to render a verdict against Williams in favor of plaintiff. Williams appeals to this Court.

The following questions are presented: (1) Was the evidence sufficient to permit the jury to conclude that Kozelski was guilty of negligence which was the proximate cause of the accident? (2) If so, was such negligence imputable to plaintiff's decedent? (3) Was the verdict of the jury excessive?

Williams contends that Kozelski was guilty of negligence contributing to the accident in (1) failing properly to control his car at the intersection and (2) in failing to keep a proper look-out. He cites Section 4125(b) of 21 *Del. C.* 1953, which provides that every driver should drive at "an appropriate reduced speed when approaching and crossing an intersection * * *." He says that the accident could have been avoided had Kozelski reduced the speed of his car or made a slight turn to the left, or both. He also said—assuming the negligence of Kozelski—that the question of whether or not such negligence was a proximate cause of the accident was for the jury to determine.

Was Kozelski guilty of negligence? Kozelski was operating his car on a through highway. He was the favored driver. As such he was entitled to assume that Williams would

obey the law and would not enter the intersection until he could do so with reasonable safety. That right continued until Kozelski was put on notice that Williams was entering, or was about to enter, the highway in the path of Kozelski's car. Absent this circumstance which would place him on warning that another vehicle was about to enter the highway in an unlawful manner, Kozelski was not bound to anticipate negligence on the part of such driver traveling on the less-favored street but was entitled to proceed without abating the speed of his car. *McCaulley v. Koster*, 5 *Terry* 424, 61 *A.* 2d 389 (Superior Ct.); *Rowles v. Evanuik*, 350 *Pa.* 64, 38 *A.* 2d 255; *Jones v. Dickerson*, 184 *Md.* 499, 41 *A.* 2d 492. In entering the highway as he did, Williams was admittedly guilty of negligence contributing to the accident. The question of whether or not he stopped at the stop sign—as he says he did—or entered the intersection without stopping is not important here. In either case, he was guilty of negligence contributing to the accident.

Williams makes much of the words "appropriate reduced speed" found in Section 4125(b) of *Title* 21 *Del. C.* 1953. He interprets this clause to mean that it is mandatory upon the driver on a through highway, at all times and under all conditions, to reduce the speed of his car to an "appropriate reduced speed", whatever that may be. He says that in failing to reduce his speed at the intersection, Kozelski violated this statute.

We do not agree. It is generally unnecessary for a driver on a through highway to slow down when he reaches an inferior crossing to ascertain whether a driver on the latter road will observe the provisions of the law and the stop sign erected in accordance therewith. *Breker v. Rosema*, 301 *Mich.* 685, 4 *N. W.* 2d 57, 141 *A. L. R.* 867; *Arnold v. Krug*, 279 *Mich.* 702, 273 *N. W.* 322; *Sonnenburg v. Monumental Motor Tours*, 198 *Md.* 227, 81 *A.* 2d 617. See 60 *C. J. S. Motor Vehicles* § 358, page 848. Unless the driver on the through highway has some warning of danger likely to occur at such intersection, the words "appropriate reduced speed" have no significance here. This does not

mean that he does not have to keep such lookout as a reasonably prudent person would do in order to discover possible danger or to act carefully under existent conditions. Of course, cases may arise where under certain circumstances the driver on a favored road may be guilty of negligence contributing to the accident. But he is not required to slow down in anticipation of danger which has not become apparent.

The case of *Arnold v. Krug, supra* [279 *Mich.* 702, 273 *N. W.* 325], is directly in point with the case before this Court. In that case the driver on the through highway was driving on the right side of the road at a reasonable rate of speed. The only negligence charged against him—which the trial court found to be true—was his failure to reduce his speed as he neared the intersection. In reversing the judgment of the trial court in favor of plaintiff, the Supreme Court said: "To impose such a duty on drivers upon trunk line highways would seriously impair their purpose, be foreign to the general conception of careful drivers of their rights and duties upon them, in large measure destroy the preferential right of way, and offer inducement to drivers approaching on intersection roads to violate their legal duties."

The purpose of through highways is to accelerate the flow of traffic thereon by permitting travelers to proceed, within lawful speed limits, without interruption and to prevent collisions at intersections. *Baltimore Transit Company v. O'Donovan*, 197 *Md.* 274, 78 *A.* 2d 647; *Greenfeld v. Hook*, 177 *Md.* 116, 8 *A.* 2d 888, 892, 136 *A. L. R.* 1485. See *Blashfield Cyclopedia of Automobile Law and Practice* (Permanent Edition) Vol. 2 (Appendix), Section 997. To interpret Section 4125(b) in the manner contended by Williams would in large measure negate, if not nullify, that purpose. The evidence is uncontradicted that the Williams car, operated without lights, collided with the Kozelski car immediately after the Williams car entered the highway. Assuming that Kozelski saw the Williams car, he was under no obligation to change his speed until it became apparent to him that Wil-

liams was going to enter the intersection in a manner which would not give Kozelski sufficient time to avoid colliding with the Williams car.

In the case of *Neal v. Neal,* 238 *Minn.* 292, 56 *N. W.* 2d 673, 677, in a similar statute of the State of Minnesota, with the exception of the reference to the prior sub-section found in the statute of this State, the language of the statute of that State is word for word the same as 21 *Del. C.,* Section 4125 (b) of this State. In that case the trial judge charged the jury that the reduced speed statute was applicable if before entering the intersection the driver on the through highway saw the car approaching the intersection from a side street before entering the intersection. In reversing the trial court, the Supreme Court said: "* * * to hold that the reduced-speed statute requires the driver on the arterial highway to always reduce his speed when approaching and crossing an intersection protected by stop signs would be both unreasonable and impractical. Such an intent should not be ascribed to the legislature. See § 645.17(1). We therefore conclude that the reduced-speed statute was not applicable to defendant Neal until such time as he reasonably should have seen that the Stelter car was not going to stop and that danger was imminent unless he reduced his speed."

We do not think that under the evidence here presented Kozelski was under any duty to reduce the speed of his car.

As to Williams' contention that Kozelski was guilty of negligence in failing to turn his car to the left, there is no merit to this contention. All the evidence, both direct and circumstantial, points conclusively to the fact that the collision occurred instantaneously after Williams entered the intersection. Kozelski had no opportunity to turn his car. The force of the collision also indicates conclusively that Kozelski could not have avoided the accident even if he had been able to turn his car.

Williams contends that the negligence of Kozelski was imputable to the deceased as the bailee of the owner of the automobile used by Kozelski and the deceased on their trip. This

contention, of course, presupposes negligence on the part of Kozelski. Since we have affirmed the ruling of the trial judge that there was no negligence on the part of Kozelski contributing to the accident, this question becomes moot and we do not consider it.

Was the verdict of the jury excessive? Williams contends that the verdict was excessive on the ground that there was no basis of fact in the record supporting it.

██ The question of whether or not a verdict is excessive is one peculiarly within the province of the trial judge, since he is better qualified to determine that question than an appellate court. For that reason appellate courts have been loath to disturb a verdict on the ground that it is excessive unless it is so excessive as to demonstrate that it was contrary to rules of law or was predicated upon passion or prejudice. No mere difference of opinion, however decided, will justify interference by an appellate court. *Bennett v. Barber,* 7 *Terry* 132, 79 *A.* 2d 363.

██ The deceased was 35 years of age. He had a life expectancy of 35.59 years. His average income was approximately $500 per month, of which he gave one-third to plaintiff. The record shows that in order to give plaintiff an income of $30 a week, so that at the end of that time both principal and interest would be exhausted, the sum needed would amount to $34,870 if invested at 3% interest and $30,292 if invested at 4% interest. It was also shown that because of the nature of the fund, it was more difficult to keep it fully invested at all times. The verdict of the jury was for $40,000, which verdict the trial judge refused to disturb. We think that there was sufficient evidence in this case to sustain the verdict in the amount found by the jury. We cannot therefore say as a matter of law that it was excessive.

The judgment below is affirmed.