MALONE FREIGHT LINES, INC., a corporation, and EUEHL M. HOLMES, also known as Ewell M. Holmes, Defendants Below, Appellants, v. JOHNSON MOTOR LINES, INC., a corporation, Plaintiff Below, Appellee.

(*March* 10, 1959.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*William H. Bennethum* for appellants.

*William Prickett* (of Prickett and Prickett) for appellee.

Supreme Court of the State of Delaware, No. 42, 1958.

SOUTHERLAND, C. J.:

In the court below Johnson Motor Lines, Inc. ("Johnson") sued Malone Freight Lines, Inc. ("Malone"), and Euehl M. Holmes to recover for damages to its tractor-trailer sustained in a collision with a tractor-trailer owned by Malone and operated by Holmes. The defendants counter-claimed for damages. The case was tried by the court without a jury. The trial judge found Malone guilty of negligence and Johnson free from contributory negligence, and gave judgment for Johnson on its claim and judgment against Malone and Holmes on their counterclaims. Malone and Holmes appeal.

Although defendants' brief specifies five grounds of appeal, only two basic questions are presented:

1. *Was there competent evidence to sustain the findings of the trial judge?*

2. *Did the court below abuse its discretion in refusing applications of defendants to amend their answers?*

1. The undisputed circumstances surrounding the collision are as follows:

On the evening of February 10, 1953, Johnson's vehicle, driven by J. E. Bray, was traveling north on Route 40, a four-lane dual highway leading from Baltimore to Route 13 at State Road, Delaware. The two northbound lanes and the two southbound lanes are separated by a grass plot about 50 feet in width. At a point about a mile north of Glasgow, Bray turned left into a cross-over connecting the northbound lanes and the south-

bound lanes, crossed the southbound lanes, parked his vehicle at Virgie's Truck Stop, and got his supper.

After he had had his supper he pulled out on the parking lot to a point opposite the cross-over, headed straight toward the cross-over, and stopped to look for southbound traffic.

After several cars had passed him he saw a truck about 175 to 200 feet north of him pull out from a position off the highway into the road and turn slowly toward the south. (This truck, another tractor-trailer about 42 to 45 feet long, is referred to in the record as "X" truck, since it was never identified.) Bray then proceeded across the southbound lanes into the cross-over, and stopped short of the nearer northbound lane of the highway. His vehicle was then clear of both northbound and southbound lanes.

Just prior to this time the Malone vehicle, operated by Holmes, was proceeding south on Route 40 at about 40 miles an hour, and was approaching and overtaking the "X" truck, which was angling out into the highway. The Malone vehicle, either as it was nearing the "X" truck or as it was passing the "X" truck, left the paved highway and proceeded down the grass plot to the cross-over, where it collided with the Johnson vehicle. Fire and serious damage to the vehicles and their cargoes resulted.

In concluding that the cause of the accident was the negligence of Holmes, the operator of the Malone vehicle, the trial judge found the following facts:

Holmes saw the "X" truck when he was one to two hundred yards north of it; it was a potential traffic hazard; instead of decreasing his speed he accelerated it and started to pass the "X" truck in the left-hand lane; the "X" truck crossed the center line, causing Holmes to apply his brakes for 28 feet and turn to the left shoulder of the highway and upon the grass plot; Holmes then proceeded down the grass plot in a left oblique direction about 100 feet and collided with the Johnson vehicle

on the extreme northeast side of the cross-over. The court drew the inference that in these circumstances Holmes was negligent in increasing his speed and attempting to pass, and that he did not have his vehicle under proper control.

The trial judge also found that Bray, the operator of the Johnson vehicle, was not guilty of any negligence.

Appellants assail these findings *seriatim* and as a whole. A reading of the testimony, however, discloses that there was competent evidence to support them. Holmes admitted that he saw the "X" truck move very slowly toward the road— "angling toward the concrete" when he was 100 to 200 yards to the north. At the trial he denied that the "X" truck's movement to the left blocked him or forced him to take to the grass plot, but a State Highway Trooper testified that Holmes told him shortly after the accident that the "X" truck forced him to drive upon the grass plot. There was also testimony that upon the grass plot his brakes were useless.

Bray, Johnson's operator, testified that he did not pull across the southbound lane into the cross-over until the "X" truck, which he was watching, blocked both southbound lanes. It is admitted that the Johnson truck had entirely cleared the southbound lanes before it was hit.

We think that it was within the province of the trier of facts to draw from these circumstances the inferences that he did draw. There was competent evidence to support his findings, and they will not be disturbed here. *Turner v. Vineyard*, 7 *Terry* (46 *Del.*) 138, 80 *A.* 2d 177; *Mulco Products Inc. v. Black*, 11 *Terry* (50 *Del.*) 246, 127 *A.* 2d 851.

Defendants insist that Bray was negligent as a matter of law (1) in failing to look to his left as he was crossing the southbound lanes; and (2) in failing to yield the right of way. These arguments overlook the undisputed fact that the collision occurred at the cross-over—not on the highway. No one is required as a matter of law to anticipate the use by an oncoming

vehicle of an island or grass plot dividing two portions of a highway. If the accident had happened on the traveled portion of the highway a wholly different question would be presented. The cases cited by defendants involve accidents of that kind. A driver of a vehicle entering a public highway from a private road must yield the right of way to vehicles "approaching on such public highway". 21 *Del. C.* § 4139(a). As defendants correctly say, his duty is somewhat similar to the duties of a driver approaching a "stop" sign. *Cf. Williams v. Chittick, Del.,* 139 *A.* 2d 375. But in this case there was testimony from which the trial court could reasonably find that the blocking of both southbound lanes by the "X" truck, barely moving across the highway, made it safe for Bray to cross the southbound lanes. In fact he did safely cross them and was struck in the cross-over —not in the highway. The trial judge found him free of negligence and we cannot disturb his finding. This is not to say that a different conclusion might not have been reached, but where two inferences are reasonably possible the choice is for the trier of the facts.

Defendants also argue that Bray's vehicle was out of control because when he did see the Malone truck coming down the grass plot he started to move his truck further on. This argument we cannot follow. The trial judge in absolving Bray from negligence necessarily held that Bray's last-minute movement was an attempt to avoid the accident. Like so many other arguments found in the defendants' brief, it is founded on an inference of fact which, as above stated, it was for the trier of facts to accept or reject. *Hyman Reiver & Co. v. Rose, Del.,* 147 *A.* 2d 500.

We are of opinion that there is no error of law in the trial judge's findings.

2. Defendants' other point concerns the refusal of the court below to permit (a) an amendment to Malone's counterclaim and (b) an amendment to Malone's and Holmes' answers.

(a) The complaint was filed February 25, 1953 and amended in March, 1954. Answer and counterclaims were filed

in April, 1954. In December, 1954, Malone moved to amend its counterclaim by adding an additional item of damage for loss of the cargo carried by its vehicle. The motion was denied. It was renewed in June, 1955, and again denied.

The ground for denial appears to have been the failure of Malone to explain to the court's satisfaction the reason for the delay in asserting the claim. Much is said in the briefs about this ruling, but in the light of the verdict of the court on the issue of liability and our affirmance of it, the alleged error has become immaterial. Since Malone has been adjudged to have no claim against Johnson, the amount of damages claimed is now of no moment. Hence, if the court was in error (we do not for a moment imply that it was), the error was harmless.

(b) On September 23, 1955, Malone and Holmes moved to amend their answers by raising a defense of *res judicata* and collateral estoppel, arising out of a judgment in the Supreme Court of New York, entered June 16, 1954, in favor of Malone in a suit involving the same accident. On October 10 Holmes presented a similar amendment to his counterclaim. Johnson filed an affidavit in opposition to the amendments to which was attached the record on appeal from the New York judgment. The Appellate Division affirmed on April 2, 1956, *Swanson v. 97 Fifth Ave. Corp.*, 1 *A.D.* 2d 768, 149 *N. Y. S.* 2d 208.

On October 25, 1955, the court below denied leave to amend on two grounds: (1) that there was no privity between Johnson and the plaintiff in the New York suit, and (2) that the proposed amendments were not timely.

The application appears to have been renewed on May 15, 1956, and again denied. The case was decided July 16, 1957.

The defendants' proposed amendments, in addition to setting forth that the suit in New York against Malone was based on the same cause of action as the Delaware suit, averred that the plaintiff was Ann G. Sassi, "a person in privity with the plaintiff herein"—*i.e.*, with Johnson.

The New York record shows that the New York suit was brought on April 13, 1953, by Ann G. Sassi, as assignee of H. B. Fuller & Co., to recover damage for loss and destruction of certain goods of Fuller & Co. which were being transported by Johnson at the time of the collision between the Malone truck and the Johnson truck on February 10, 1953. The case was tried by the court without a jury, and the trial judge found for the defendant. He held that Bray, Johnson's driver, was negligent, and that Holmes, Malone's driver, was not negligent.

The New York record also sufficiently shows the following facts:

Fuller & Co. made claim for loss against Johnson and was paid by Home Insurance Co., Johnson's insurer. Since Johnson was a common carrier, its liability to Fuller was that of an insurer of the goods carried (subject to exceptions not pertinent here). *Klair & Hollingsworth v. Philadelphia B. & W. R. Co.,* 2 *Boyce* 274, 302, 78 *A.* 1085. Thus, Fuller, Johnson, and Home may be said to have stood in the relation of insured, insurer, and re-insurer. On March 10, 1955, the claim of Fuller against Malone was assigned to Ann G. Sassi, a receptionist in the office of the attorneys who brought the suit. Although Home was not named as a party, it seems clear that after the bailor of the goods had been paid by the bailee's insurance carrier, the insurance carrier was the party entitled to enforce for its benefit the bailor's cause of action against Malone. This is so, notwithstanding a colloquy in the record suggesting that the proceeds of the recovery would be held for the bailee. Obviously, it was the bailee's insurance carrier, who had indemnified the bailee, who would be ultimately entitled to the proceeds of any recovery. The New York suit was accordingly a subrogation suit to enforce the bailor's right of recovery against a third party wrongdoer.

■ The question before us is one of privity. No point is raised as to the identity of the issues in the two suits, although we note in passing that in a suit by a bailor against a wrongdoer the bailor cannot be charged with the contributory negli-

gence of the bailee. *Restatement, Torts* (Negligence), § 489. The precise point, therefore, is this:

Does the judgment in the suit by Johnson's indemnitor, brought to enforce the right of the bailor against a third party for damage to the bailed chattel, foreclose Johnson, the bailee, from a subsequent suit to enforce its own cause of action for damage to its motor vehicle?

It is important to bear in mind that the New York suit was brought to enforce only the right of action of the bailor. Although Johnson, the bailee, could itself have maintained a similar action (*Terry v. Pennsylvania R. Co.*, 5 *W. W. Harr.* (35 *Del.*) 1, 5, 156 *A.* 787), it did not do so.

The extent to which a bailee is bound by a judgment against the bailor is discussed and ruled on in *Hornstein v. Kramer Bros. Freight lines*, 3 *Cir.*, 133 *F.* 2d 143, 147. In that case Judge Goodrich said:

"Indeed a victory or defeat in an action brought by a bailor for a term against a third person for harm to the chattel does not bar or otherwise affect a subsequent action by the bailee. *Restatement, Judgments* (1942) § 88 (3). It is categorically stated that an adjudication in favor of or against either bailor or bailee in an action brought by a third person is not conclusive in a subsequent action against the other. The statement, we think, declares a sound rule of law. Any privity between bailor and bailee is necessarily based upon their common interest in the bailed chattel, and should be limited to situations where that common interest is involved in the suit."

■ *A fortiori,* a bailee suing to recover for loss to property not the subject of the bailment is not barred by a judgment against the bailor in a suit to recover for damages to the bailed chattel.

■ Nor does any question of splitting the cause of action arise by reason of the fact that the first suit was brought by the indemnitor of the bailee. Johnson was not a party to the New

York suit, nor did Johnson control it. Johnson was in no way concerned with the suit except as the outcome might affect its right as bailee to recover for damages to the bailed chattel. Johnson's right of action for damages to its vehicle was not included in the New York suit, nor could it have been so included. The plaintiff in that suit had acquired nothing but the right of action of Fuller to recover from Malone damages to the bailed chattel. There is no suggestion that Home was also Johnson's indemnitor in respect of damages to Johnson's vehicle.

The fundamental basis of the doctrine of *res judicata*, and of its subsidiary rule, collateral estoppel, is that in the public interest a litigant may have one day in court but not two. *Coca Cola Co. v. Pepsi-Cola Co.*, 6 *W. W. Harr.* (36 *Del.*) 124, 172 A. 260. But he must have his day in court. Johnson did not have his day in court in the New York suit in respect of the present action, and the judgment there does not, in our opinion, bar the Delaware suit.

Defendants insist that the question here is not one of privity between Fuller and Johnson, but one of privity between Home and Johnson. It is difficult to follow the argument, which is not developed on the brief. Malone argues that since Fuller had been paid in full he had no interest in the case and the only party that had any special property in the goods was Johnson, the bailee. This argument ignores the fact that Fuller's right of action as bailor was assigned to the plaintiff in the New York suit. It was not Johnson's suit to recover for damages to its special property in the bailed chattel. If Malone means that because of the limited privity between bailor and bailee, Johnson is bound by the New York judgment in respect of its right to sue for such damages, the argument does not touch the point. Assuming that it is so bound, it is not bound in respect of its right to sue for damages to its motor vehicle, for the reasons heretofore set forth. If Fuller had sued Malone directly, a judgment against Fuller could not have bound Johnson in the present case, and we fail to see how a judgment against the assignee of Fuller could bind Johnson in the present case. That the assignee

was Home, Johnson's indemnitor, is immaterial. This is not a case of an attempt by a plaintiff to recover in successive suits against indemnitor and indemnitee. *Cf. Restatement, Judgments,* § 96. Nor is it a case in which the insurance company sues as the assignee of the claim of its assured, as in *Nardolillo v. Carroll,* 70 *R. I.* 133, 37 *A.* 2d 659.

Malone cites to us no case opposed to the conclusion we have reached. *Anheuser-Busch Inc. v. Starley,* 28 *Cal.* 2d 347, 170 *P.* 2d 448, 166 *A. L. R.* 198, was a suit against a third party by a bailor who had been paid in full by the bailee. The bailor insisted that it brought the suit in its own right and not as trustee for the bailee or the bailee's insurance company. The point at issue was whether a double recovery for the benefit of the bailor would result. The case is not apposite.

We are of opinion that the Superior Court properly held that there was no privity between Johnson and the plaintiff in the New York action.

A technical objection is lodged to the consideration by the trial court of the merits of the proposed amendments on an application for leave to amend. It is said that since the amendments on their face alleged privity between the two plaintiffs in the two suits, the court should have permitted the amendments to be filed and should have considered the merits thereafter.

This was a mere question of procedure that was for the trial court, in its discretion, to decide. Its action is not reviewable here.

In the light of our holding on the merits of the amendments, it is unnecessary for us to discuss the second reason assigned by the trial court for rejecting the amendments to the answer, namely, that they were not timely. Since leave to amend was not sought until fifteen months after the rendition of the New York judgment, and only five weeks before trial, Johnson naturally argues that the trial court did not abuse its discretion in refusing leave to amend. This argument has force, but we have

preferred to consider the merits of the amendments, since the lower court based its action partly on the merits.

The judgment of the Superior Court will be affirmed.