MALONE FREIGHT LINES, INC., a corporation, Plaintiff, v. JOHN-SON MOTOR LINES, INC., a corporation, and JOYCE EDGAR BRAY, Defendants.

*(December* 10, 1959.)

CHRISTIE, J., sitting.

*William H. Bennethum* for Plaintiff.

*William Prickett* (of Prickett and Prickett) for Defendants.

Superior Court for New Castle County, No. 770, Civil Action, 1955.

CHRSTIE, J.:

Plaintiff, Malone Freight Lines, Inc. (Malone), and defendant, Johnson Motor Lines, Inc. (Johnson), are carriers. The plaintiff's and the defendant's vehicles were involved in an accident on February 10, 1953, in Delaware, as a result of which both vehicles were damaged and the cargo being hauled by Malone was completely destroyed.

Malone's liability as a carrier was insured by St. Paul Fire and Marine Insurance Company (St. Paul) and Malone's property damage was insured by another company.

Johnson brought an action based on negligence for property damage to its vehicle, captioned *Johnson v. Malone,* 188 *C. A.* 1953, in this Court (referred to herein as the first Delaware case). Malone answered denying negligence and alleging that Johnson was negligent and counterclaimed for the damage to its trailer. Johnson answered the counterclaim denying negligence and asserting that the collision was due to Malone's negligence.

This Court found that Malone was negligent and Johnson *not* negligent. Judgment was entered for the full amount of Johnson's claim. Malone's counterclaim was denied.

Malone appealed to the Supreme Court. 1 *Storey* 504, 148 *A*. 2d 770, 773 (1959). On appeal, Malone argued that there was no competent evidence to support the findings of the trial judge. The Supreme Court found that there was competent evidence to support the findings. Malone also argued that this Court had erred in a ruling denying an application by Malone to amend its answer so as to include a counterclaim for the loss of the cargo of the Malone vehicle. On this point the Supreme Court stated:

"(a) The complaint was filed February 25, 1953 and amended in March, 1954. Answer and counterclaims were filed in April 1954. In December, 1954, Malone moved to amend its counterclaim by adding an additional item of damage for loss of the cargo carried by its vehicle. The motion was denied. It is renewed in June, 1955, and again denied.

"The ground for denial appears to have been the failure of Malone to explain to the court's satisfaction the reason for the delay in asserting the claim. Much is said in the briefs about this ruling, but in the light of the verdict of the court on the issue of liability and our affirmance of it, the alleged error has become immaterial. Since Malone has been adjudged to have no claim against Johnson, the amount of damages claimed is now of no moment. Hence, if the court was in error (we do not for a moment imply that it was), the error was harmless."

Meanwhile, this suit (sometimes referred to herein as the second Delaware suit) had been filed whereby Malone sues Johnson for the loss of Malone's cargo.

Johnson has moved for summary judgment based upon *res judicata,* collateral estoppel and upon the theory that Malone is attempting to split one cause of action by asserting its claim for damages to its vehicle by way of a counterclaim in the first suit and its damages for cargo loss in this a separate suit. This decision is confined to the issues raised by Johnson's motion.

Malone insists that the defenses here asserted by Johnson are not applicable because Malone's name is merely being used by St. Paul to assert a claim of the United States for lost cargo. At the same time, Malone must also insist that it is a real party in interest in this suit.

St. Paul Fire and Marine Insurance Company paid Malone $39,534.43 on account of the loss of the cargo and took in exchange for such payment loan receipts. Under the terms of the loan receipts Malone in effect appointed St. Paul its manager and agent in respect to its claim for the lost cargo, with full authority to act in Malone's name in connection with any claim arising out of such loss. The loan receipts required that Malone repay the loan only in the event and to the extent of any net recovery Malone may receive from others on account of the loss.

It is apparent that all attempts to recover for the loss of Malone's cargo, both in the first Delaware suit and in this suit, have been made by St. Paul in Malone's name. Malone's real interest in the cargo loss, if it has a real interest, stems only from its bare legal title to the claim and its legal obligation under the loan receipt.

St. Paul, through the terms of loan receipts, acquired the right to assert, in Malone's name, any claim Malone had on account of the loss of cargo. United States was not a party to the loan receipts and St. Paul did not acquire any separate rights which the United States might have had. Thus, St. Paul, in acting through Malone, is subject to all of the defenses which could have been asserted against Malone in the absence of the loan receipts. A loan receipt does not insulate the insurer from defenses that may be asserted against the insured nor does it effectively assign to the insurer rights which the insured does not possess.

Malone cites many cases as to the validity and legal import of the terms of loan receipts, but such cases do not indicate that the insured acting for the insurer under the terms of a loan

receipt, is immune from defenses which could be asserted against the insured in the absence of a loan receipt.

Even if the loan receipts were regarded as instruments of subrogation, St. Paul would be subrogated to Malone's position and not to the position of the United States. In that case St. Paul would have no rights not possessed by Malone. *Phoenix Insurance Co. v. Erie & Western Transportation Co.*, 1886, 117 *U. S.* 312, 6 *S. Ct.* 750, 29 *L. Ed.* 873.

In any event, Malone (then, as now, acting for St. Paul under the terms of loan receipts) attempted to assert the very claim it here asserts in the prior suit in this Court. Malone's attempt in the first Delaware case to amend its answer to assert a counterclaim for loss of cargo was before the Supreme Court and the record revealed that this Court had refused to permit the amendment. The Supreme Court stated that even if the refusal to allow the amendment were error, such error was harmless and immaterial, and that since Malone has been adjudged to have no claim against Johnson, the amount of damages claimed is of no moment.

The language of the Supreme Court shows that it regarded the decision of this Court to have disposed of the claim here asserted. The only important additional factors before the Court which were not before the Supreme Court are the details of the relationship between Malone and one of its insurance carriers. These reveal that St. Paul rather than Malone would receive the ultimate benefit from any recovery by Malone and that St. Paul has been in complete charge of Malone's attempt to recover for the loss of the cargo. This additional information reveals a very common situation but it is without pertinent legal significance as between the parties to this action.

Malone has had its day in Court against Johnson in respect to any and all claims for damages which Malone has against Johnson on account of the collision which occurred February 10, 1953. The decision of this Court in the first Dela-

ware case as interpreted by the Supreme Court is *res judicata* as to the claim here asserted. *Williams v. Daisey*, 7 *W. W. Harr.* 161, 180 *A.* 908 (*Superior Court* 1935).

If, on the other hand, the plain language of the Supreme Court in the first Delaware case is ignored and that case is not deemed to have disposed of the claim now before this Court, a separate adjudication of such claim as between the parties before the Court would involve an improper splitting of a single cause of action and collateral estoppel. See *Levitt v. Simco Sales Service of Penn.*, 11 *Terry* 557, 135 *A.* 2d 910 (*Superior Court* 1957) where a similar result was reached although it was a subrogation case involving property damages and personal injuries.

Malone attaches importance to a suit in New York State arising out of the same accident. *Sassi v. Malone* (unreported in the Supreme Ct. for N. Y. County; affirmed without opinion by Appellate Div., 149 *N. Y. S.* 2d 208 (1957). In that suit Sassi, assignee of the owner of the cargo in the Johnson vehicle, sued Malone for damages to the Johnson cargo, and the Court found that the negligence of Johnson's driver was the sole cause of the accident. Thus, no recovery was allowed for damages to the Johnson cargo.

When Johnson sued Malone in the first Delaware suit for damages to Johnson's vehicle, Malone attempted to assert the New York decision as *res judicata* as to the issues before this Court.

This Court refused to recognize the New York decision as *res judicata*. Such refusal was upheld by the Supreme Court upon the ground that there was no such privity between the owner of the Johnson cargo (as bailor) and Johnson (as bailee) to warrant the application of the doctrine of *res judicata*. The decision of this Court in the first Delaware case as to which driver was negligent is directly opposed to the prior decision of the New York Court.

How, then, argues Malone, can the first Delaware suit dealing with the damages to Malone's vehicle be *res judicata* as to this, the second Delaware suit, which deals with the Malone cargo. If two elements of damages on Johnson's side of the dispute can be litigated separately, why not separate trials as to the same two elements on Malone's side of the dispute?

The short answer to this argument is that in the first Delaware suit there was what amounts to an adjudication of the claim now before this Court; whereas in the New York suit no mention was made of the damages which later formed the basis of the claim asserted by Johnson in the first Delaware case and furthermore Sassi could not have claimed any damages other than cargo damages. Thus, *res judicata* finds literal application

A more complete answer is found in the collateral estoppel and in the elementary complexities of the law as to suits by bailors and bailees.

The bailor of the Johson cargo was Fuller, who assigned his claim to Sassi. The bailor of the Malone cargo was the United States. These bailors entrusted their cargoes to the carriers Johnson and Malone as bailees under circumstances which made the carriers insurers of the cargoes. When damage or loss occurred in respect to the cargoes both the bailors and the bailees had rights of action against those whose negligence caused the loss. *Terry v. Pennsylvania R. Co.*, 5 *W. W. Harr.* 1, 156 *A.* 787 (*Superior Court* 1931). If the bailor sued, it had to assert all its claims, but its claim would necessarily be limited to the damages connected with the goods subject to the bailment. If the bailee sued, it also must assert all its claims and its possible claims include both the damages connected with the goods subject to bailment and any other damages it might have as owner of one of the vehicles involved in the accident.

A bailor, as owner of the cargo, could assert only a claim for cargo since it had no financial or legal interest in the dam-

age to the vehicles. If the bailor brought a suit against the third party, the result of such suit would bind the bailee as to the claim connected with the cargo, but it would have no bearing on a claim by the bailee for damages to its vehicle.

If, on the other hand, the bailee carrier brings a suit for any claim arising out of the collision, it must assert all of its claims against a particular defendant arising from a single occurrence. If it sues only for damages to goods subject to bailment and fails to claim any other damages it may have sustained, it cannot later bring another action for such damages. There are important exceptions to these rules but they are not pertinent here.

■ And so it is that Sassi, as bailor, brought a suit, the decision of which did not work an estoppel as to a suit by Johnson, the bailee, insofar as Johnson's suit deals with damages not connected with the goods subject to the bailment. Yet, if Malone, as bailee, asserts its claim for the loss of the cargo subject to bailment, the adjudication on that issue works an estoppel against Malone as to other elements of damages Malone might have asserted, and Malone or one acting in Malone's name may not split Malone's cause of action. The law on this subject is touched upon by the Supreme Court in *Malone Freight Lines, Inc. v. Johnson Motor Lines, Inc., supra.* See also the *Restatement, Judgments* § 88 cited with approval by the Supreme Court.

■ Malone also complains that Johnson's motion to amend its answer in this case so as to include the defenses here discussed came almost two years after the decision of this Court in the first Delaware case. Malone argues that since it was deprived of the right to claim damages for its cargo in the first action because of delay in asserting a claim for such damages, so now Johnson should be deprived of its right to assert *res judicata* and the related defenses discussed herein on account of Johnson's delay.

After a review of the docket in this case, I have concluded that Johnson has not been guilty of such delay as should cause a forfeiture of its right to assert the defenses here under consideration. In fact, Johnson filed its motion on this point within a week after the mandate came down from the Supreme Court in the first Delaware case. Such defense might well have been pleaded without waiting for the outcome of the appeal and the appeal in the New York case appears to have been pending when this Court refused to permit the amendment in the first Delaware case. Nevertheless, it is apparent that both parties were willing to let this case lie dormant until the first Delaware case went to final judgment, and no substantial prejudice was suffered by Malone on account of the delay .

For the reasons stated, defendants' motion for summary judgment in its favor is granted.