**Irene STEARRETT, Individually and as next friend of Linda Stearrett and Francis A. Stearrett, Plaintiffs,**

v.

**John SYVA, a/k/a Nicholas John Syva, Defendant.**

Superior Court of Delaware, New Castle.

Dec. 16, 1971.

Victor F. Battaglia, Wilmington, for plaintiffs.

Thomas Herlihy, III, Wilmington, for defendant.

STIFTEL, President Judge.

Linda Stearrett, driving a 1960 Pontiac owned by her parents, stopped at Our Lady of Fatima Church for her brother. He had been attending Mass. It was 7:30 in the

morning and she needed gas. She turned into the crossover from the northbound lanes of the DuPont Highway to the southbound lanes in order to go to Kohler's Atlantic Gas Station, slightly south of the median strip crossover near the Minquadale School. She came to a full stop at the point where the crossover begins to intersect the southbound lanes of the DuPont Highway. She and her brother, David F. Stearrett, say that they looked both ways before she started to move into the southbound lanes. Linda Stearrett never saw the car that hit her car. She had been talking to her brother about the Mass and about the people attending the Mass. He had been facing her but at or about the time of the accident, was looking straight ahead. The traffic was heavy at the time. It was Wednesday, and people were going to work. The day was clear. There was no obstruction to sight. The following excerpt from Linda's deposition explains where on the highway the impact occurred: [1]

"Q. And at impact, I am not clear exactly what lanes you were in at impact.

"A. I would say that I was almost completing my turn to be straight on the southbound lane.

"Q. And there are three lanes at that point; right?

"A. Uh huh.

"Q. Which southbound lane are you talking about?

"A. I would say the farthest—the middle one and the farthest one from the point where I started.

"Q. So that the front of your car would be in the furthest southbound lane from the point where you started; is that what you are saying?

"A. Approximately, yes.

"Q. And the rear of your car would be in the center of the lanes which are southbound at that point?

"A. I would say more or less. The doors were there, the middle of the car."

Her brother related: [2]

" . . . Then after everything was clear she proceeded out, and she passed the first lane and was about to straighten up in the middle lane, and then we felt an impact . . . "

and later in his deposition:

"Q. Was it the first lane or center lane or the far lane, do you think?

"A. Linda had crossed the first lane and the door would be—well, I'm not exactly sure, so around the first lane or maybe in the middle.

"Q. When you say she crossed the first lane, do you mean the whole car had gone across or what do you mean by that?

"A. I mean she had gone over the first lane and was beginning to straighten out in the center."

In her post-argument affidavit, Linda Stearrett offered an explanation why she did not see defendant's oncoming car. She said that approximately 300 feet north of the crossover in the southbound lanes, there was a blinking caution light. Immediately north of the caution light, she said, there is a "dip in the bed of U.S. Route 13 southbound and as vehicles approach the intersection from which the Plaintiff emerged from the northerly direction and before reaching the traffic light the vehicles are not visible from the intersecting lane from which the Plaintiff emerged." [3]

She then explained that defendant "traveled over 300 feet to the point of intersection at an excessively high rate of speed

---

1. Linda Stearrett dep., pp. 12–13.

2. David Stearrett dep., pp. 3, 6.

3. Aff. par. 7.

causing his vehicle to collide with the Plaintiff's vehicle which had negotiated the turn so as to proceed in a southerly direction on U.S. Route 13." Further, she said: "The defendant traveled at such a rate of speed as to be unable to avoid the collision with the Plaintiff's vehicle which was in open view . . . ".[4]

Lastly, plaintiff says she had no way of "anticipating that the Defendant would be driving at such a reckless speed as to cause his vehicle to transverse the distance between the light and her vehicle in such a short time." [5]

Defendant asked for summary judgment. He says that plaintiff driver was contributorily negligent as a matter of law and that her negligence was a proximate cause of the accident and her resulting injuries.

Defendant was on a through highway.

"The purpose of through highways is to accelerate the flow of traffic thereon by permitting travelers to proceed, within lawful speed limits, without interruption . . . ". Williams v. Chittick, 1 Storey 122, 139 A.2d 375 at 379.

There was no obligation on the part of defendant to reduce his speed until it became apparent to him by maintaining a proper lookout that plaintiff driver was going to enter the intersection from her stopped position. Williams v. Chittick, *supra*. Then, of course, he had an obligation to act to avoid the accident.

There is no evidence at all in the record about the actual speed of the defendant immediately prior to the accident. Plaintiff driver said he was traveling at an "excessively high rate of speed" and a "reckless rate of speed". In Law v. Gallegher, 9

W.W.Harr. 189, 197 A. 479, at 487, Chief Justice Layton quotes from another case, as follows:

" 'It is true that the speed was described as "swift", and the jar or lurch as "quite violent," "terrible", "awful", "very severe" and "unexpected". Mere expletive or declamatory words or phrases as descriptive of speed or acts unaccompanied by any evidence capable of conveying to the ordinary mind some definite conception of a specific physical fact, and depending generally upon the degree of nervous emotion, exuberance of diction, and volatility of imagination of the witness, and not upon his capacity to reproduce by language a true picture of a past event, are of slight, if, indeed, they are of any, assistance in determining the real character of the fact respecting which they are used.' "

Plaintiff driver's expletive expressions describing defendant's speed are of no help. There is no indication that defendant was exceeding the lawful speed. Conjecture cannot be substituted for evidence. Plaintiff was confronted by a stop sign at the entrance from the crossover to southbound Route 13. She stopped. But stopping alone is not sufficient. She had to remain stopped until such time as it was safe to cross Route 13, an arterial highway. 21 Del.C. § 4164(c).[6]

Usually, when an accident happens in this manner, it is attributable to the fault of the driver moving from the stop sign into the path of oncoming traffic. The Stearrett car was hit at the front passenger side door of the car while Linda was crossing and proceeding to turn into the center or the outside lane of traffic. It was insufficient for plaintiff driver to look before she drove out onto Route 13. She was re-

---

4. Aff. par. 8.

5. Aff. par. 10.

6. 21 Del.C. § 4164(c) reads as follows:
   "(c) The operator of any vehicle who has come to a full stop as provided in subsection (b) of this section, shall not enter into, upon or across, such highway or street until such movement can be made in safety."

quired to maintain a continual vigilance to make sure there were no cars approaching from her right southbound. There is no indication that she continued to look. She was engaged in conversation with her brother, who also had finished looking to the right, and was glancing toward her and then looking straight ahead—not in the direction of defendant's oncoming vehicle.

This case is within the scope of Rumble v. Lingo, 1 Storey 417, 147 A.2d 511 and DiSabatino v. Ellis, 5 Storey 84, 184 A.2d 469. In *DiSabatino*, Judge Duffy, for the Supreme Court, stated, 184 A.2d at page 473–474:

> "As Mrs. Ellis waited at the stop sign, she was under a duty not to enter into, upon or across Fourth Street until such a movement could be made in safety. Thus she was, under the statutory scheme for traffic control, the 'unfavored' driver in contrast with Mr. DiSabatino, who was proceeding on the 'favored' street.

> "We agree with Judge Terry's conclusion in Rumble v. Lingo, 1 Storey 417, 147 A.2d 511, that the language of 21 Del.C. § 4143 is free from ambiguity and hence leaves no room for construction. And where the language of a statute is plain and conveys a clear and definite meaning, the courts will give to the statute the exact meaning conveyed by the language. Federal United Corporation v. Havender, 24 Del.Ch. 318, 11 A.2d 331.

> "As Judge Terry noted, the statute requires the driver of a motor vehicle, who has stopped his vehicle in obedience to a sign, to refrain from negotiating the intersection until he can do so in safety. It is unnecesary for us to consider the scope of the presumption that is raised when the statute is violated. It is sufficient to say that in the case at bar when Mrs. Ellis attempted to negotiate the intersection —when she tried to cross Fourth Street —she could not do so in safety."

Even on facts and circumstances which most favor plaintiff, I must conclude, as a matter of law, that she did not look as she was required to look under Delaware law and that her failure so to do was a contributing cause of this accident and her unfortunate injuries.

Judgment for defendant.

It is so ordered.