Bessie H. WISE, for herself and as administratrix of the estate of Robert H. Wise, Deceased, et al., Appellant,

v.

GEORGE C. ROTHWELL, INC. and William B. Harrington, Appellees.

No. 73-1671.

United States Court of Appeals, Third Circuit.

Argued Feb. 12, 1974.

Decided April 23, 1974.

385

Richard L. Polin, Philadelphia, Pa., John Merwin Bader, Bader Dorsey & Kreshtool, Wilmington, Del., for appellant.

F. Alton Tybout, Wilmington, Del., for appellees.

Before VAN DUSEN and ADAMS, Circuit Judges, and HUYETT, District Judge.

## OPINION OF THE COURT

HUYETT, District Judge.

Appellant seeks reversal of the district court judgment, entered after trial without a jury, finding the appellee not negligent in the operation of a tractor trailer truck while proceeding from a private road onto a through highway.[1]

---

1. Jurisdiction in the district court was based on diversity of citizenship. 28 U.S.C. § 1332(a)(1) (1970).

Because we consider the district court to have applied an erroneous standard of care under Delaware law in determining the question of appellees' negligence and because we are unable to find on the record before us that appellant's decedent was contributorily negligent as a matter of law, we vacate the judgment of the district court and remand for consideration in accordance with our opinion.

Delaware Route 24 is a two-lane highway running east-west at the point where the vehicular accident giving rise to this action occurred. The plant complex of Townsend, Inc. (Townsend) is located on Route 24 two miles east of Millsboro, Delaware. A private road leading from the Townsend plant forms a T–intersection from the south with Route 24. For a mile west of the Townsend plant Route 24 is a straight road.

At about 10:45 P.M. on October 23, 1969, appellant's decedent, Robert H. Wise, was traveling eastward on Route 24. There is conflicting evidence in the record concerning the number of vehicles in front of the decedent's car as he approached the area of the Townsend plant. It is clear that there was at least one vehicle, a car driven by Ann Norwood, in front of the decedent's car. The district court found that there was also a truck operated by Paul Wothers between the decedent's car and the Norwood car traveling east toward the Townsend plant.[2] Norwood testified that she saw the headlights of a vehicle behind her as she turned a curve a little more than a mile before the Townsend plant. She was unable to determine, however, whether the vehicle behind her was a car or a truck; nor was she able to estimate the distance the vehicle behind her was from her car other than that the vehicle was no more than a half mile behind her car.[3]

Appellee, Harrington, was at the time of the accident operating a tractor trailer owned by Rothwell. As the Norwood car, traveling on Route 24, approached the private roadway on the Townsend property, appellee's truck was either standing in the private roadway at the edge of Route 24 or just approaching Route 24 preparing to make a left turn onto Route 24. Having allowed the Norwood car to pass him on Route 24, Harrington pulled out onto Route 24 intending to turn left.

Harrington testified that he looked west after the Norwood car had passed him and saw a set of headlights. It was Harrington's testimony that when he pulled out from the private road the approaching vehicle was about a half mile away. He also testified that he was 10 to 15 seconds into his turn when the impact of decedent's car with the truck occurred. The left side of Wise's vehicle collided with the Rothwell truck at a point just in front of the rear tandem wheels of the trailer.[4]

After analyzing the evidence in the record and after considering the credibility of the witnesses who had testified, the district court determined that sufficient time existed to allow Harrington to make a left turn onto Route 24 without creating an "immediate hazard" to the traffic approaching the private Townsend road. Largely crediting Harrington's testimony the district court found that at least ten seconds elapsed from the time Harrington began to cross Route 24 and the time the impact

2. The district court found that the Wothers' truck was pulling off onto the shoulder of Route 24 as decedent's car made a passing maneuver around the Wothers' truck. The Wothers' truck joined a line of trucks waiting on the south side of Route 24 to enter the Townsend plant. Townsend was in its busy season with trucks entering and leaving the plant frequently. Wise was an employee of Townsend and was familiar with the

amount of traffic generated during this season.

3. On direct examination Norwood testified that she thought the vehicle behind her was a police car and therefore she decreased her speed. On cross-examination, however, she stated that she wasn't sure whether the vehicle behind her was a car or a truck.

4. Both the front and rear tandem wheels are towards the rear of the trailer.

occurred.[5] Ten seconds was considered sufficient time to allow a vehicle traveling east at a reasonable speed to slow down so as to prevent a collision with a vehicle crossing Route 24 from the private road.

The Delaware statute governing the conduct of a person proceeding from a private road onto a through highway states:

> The driver of a vehicle about to enter or cross a highway from a private road or driveway or from a crossover on a divided highway shall yield the right of way to all vehicles approaching on the highway.[6]

■ We must determine the standard of care this statute imposes on a person proceeding from a private road onto a through highway. In making this determination we are bound to apply the standard of care the Delaware Supreme Court would apply were that court faced with the issue now before us. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). And when there is "no decision by [the State's highest court] then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. Bernhardt v. Polygraphic Co., 350 U.S. 198 [, 76 S.Ct. 273, 100 L.Ed. 199] (1956)." Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. at 465, 87 S.Ct. at 1783, *supra*. See also Quinones v. United States, 492 F.2d 1269 (3 Cir. filed March 6, 1974); In re Royal Electrotype Corporation, 485 F.2d 394 (3 Cir. 1973).

■ The Delaware Supreme Court has not addressed itself to the standard of care imposed by 21 Del.Code § 4133(a). In Malone Freight Lines, Inc. v. Johnson Motor Lines, Inc., 1 Storey 504, 148 A.2d 770 (Del.Supreme Ct.

1959), however, the court considered whether a driver of a truck was contributorily negligent in proceeding from a private road across the southbound lanes of a four-lane highway. The truck had proceeded safely across the two southbound lanes and had come to rest in a grassy crossover area between the north and southbound lanes. No part of the truck was then in the southbound lanes. While resting in the crossover area for the purpose of making a left turn onto the northbound lanes, the truck was hit by a truck traveling south. The southbound truck had veered off the highway onto the grassy area separating the south and northbound lanes attempting to pass a truck identified in the record only as the "X" truck which was also traveling south. The defendants, the owner and driver of the southbound truck, argued that plaintiff failed to look to his left as he crossed the southbound lanes and failed to yield the right of way. The court observed, however, that the accident did not occur on the highway but on the crossover area. Plaintiff was not expected to anticipate the use by an oncoming vehicle of an island or grass plot dividing two portions of a highway. The Court continued:

> If the accident had happened on the traveled portion of the highway a wholly different question would be presented. The cases cited by defendants involve accidents of that kind. A driver of a vehicle entering a public highway from a private road must yield the right of way to vehicles "approaching on such public highway". 21 Del.C. § 4139(a). [now codified at 21 Del.C. § 4133(a)] As defendants correctly say, his duty is somewhat similar to the duties of a driver approaching a "stop" sign. *Cf.* Williams v. Chittick, Del. [1 Storey 122], 139 A.2d 375 [Del.Supreme Ct.1959]. But in this case there was testimony from which the trial court could reasonably find that the blocking of both south-

---

5. An expert for appellant testified that it would take a truck such as that driven by Harrington 6.8 to a maximum of 8 seconds

to reach the point of impact testified to by Harrington.

6. 21 Del.C. § 4133(a).

bound lanes by the "X" truck, barely moving across the highway, made it safe for Bray [the operator of plaintiff's truck] to cross the southbound lanes.

Malone Freight Lines, Inc. v. Johnson Motor Lines, Inc., 148 A.2d, at 772, *supra.* We consider this statement to indicate that the Delaware Supreme Court would apply the same standard of care to conduct governed by § 4133 as to conduct governed by the Delaware stop sign statute, 21 Del.C. § 4164(c).

In DiSabatino v. Ellis, 184 A.2d 469 (Del.Supreme Ct.1962) the court distinguished between the standard of care required by the stop sign statute and that required by a City of Wilmington regulation. The stop sign statute "makes stopping mandatory and then commands the driver to 'not enter into, upon or across, such highway or street until such movement can be made in safety.' * * * The regulation, on the other hand, obliges the driver to stop and then yield to other vehicles 'within the intersection or approaching so closely * * * as to constitute an immediate hazard'; but having yielded to those whose proximity makes them 'an immediate hazard', the driver may then proceed under a right to have others yield to him. * * * [T]he statute imposes a higher duty upon the driver controlled by the stop sign than does the regulation; under the latter he must yield only to those close enough to be an 'immediate hazard', while under the statute he may not go until he can do so 'in safety' ". DiSabatino v. Ellis, 184 A.2d at 471–472, *supra.*

Rumble v. Lingo, 1 Storey 417, 147 A.2d 511 (Del.Superior Ct.1958), cited approvingly by the *DiSabatino* court, formulated the following standard of care governing a person's conduct after stopping for a stop sign:

[A]n operator of a motor vehicle in this State who in obedience to a stop sign has stopped at an intersection prior to traversing the same against a traffic flow is specifically charged under the provisions of Section 4143(b) [now codified at 21 Del.C. § 4146(c)] aforesaid to refrain from negotiating the intersection until he can do so with safety, and this embraces placing the burden on said operator to maintain a continual vigilance and such control over his vehicle that he may avoid immediate hazards of approaching traffic while crossing the favored highway. The fact that a plaintiff operator does enter an intersection and is involved in a collision within the danger area thereof with a motor vehicle travelling in the favored traffic pattern raises a conclusive presumption of contributory negligence on his part except (1) where the evidence discloses the occurrence of an unforeseeable circumstance which is beyond the control of the operator, or (2) where the plaintiff has pleaded the last clear chance doctrine and the evidence is sufficient to admit the same.

Rumble v. Lingo, 147 A.2d at 513, *supra.* In Rich v. Dean, 261 A.2d 522 (Del.Supreme Ct.1969) the court amplified the conclusive presumption language of Rumble in holding that a violation of the stop sign statute constitutes negligence *per se.* *See also,* Stearrett v. Syva, 285 A.2d 816 (Del.Superior Ct. 1971).

We find these Delaware court cases conclusive in determining the standard of care the Delaware Supreme Court would apply to the conduct of a person regulated by the private road statute. *Cf.* Neiderman v. Smith, 199 A.2d 324 (Del.Superior Ct.1964) (court applied *Rumble* analysis to Delaware statute governing duty of driver of parked vehicle entering from curb into the flow of traffic).

■ A review of the lower court's findings of fact in this case convinces us that an erroneous standard of care was applied to defendant's conduct in proceeding from the private road of the Townsend plant. Of course, the mere use by the lower court of the term "immediate hazard" is not persuasive of the standard applied. In applying the evi-

dence before it, however, the court concluded that the time estimate of eight seconds by plaintiff's expert and ten seconds by Harrington for the appellee's truck to proceed from the edge of Route 24 to the point in the highway at which the impact occurred was "ample to have allowed the decedent to adjust his speed or alter his course to avoid a collision had he been traveling at a reasonable speed." This conclusion assumes that Harrington would not be negligent so long as he could travel across Route 24 leaving enough distance between his truck and any approaching vehicles so that the approaching vehicle could slow down or stop in time to avoid a collision. *DiSabatino* as applied to § 4133 requires, however, that Harrington leave enough distance between his vehicle and any approaching traffic so that the approaching traffic is not in any way impeded. The rule is subject to the exceptions noted by Judge Terry in *Rumble*. The district court on remand should reassess the evidence in the record in light of the standard of care we find to be controlling.

▮ Appellee argues that we should affirm the district court based on the evidence in the record of the plaintiff's contributory negligence. Appellee in the court below offered evidence that appel-lant's decedent was speeding and that he was driving while under the influence of alcohol. The district court made no findings of fact or conclusions of law in respect to the evidence of contributory negligence. The court's findings of fact make no reference to the evidence of intoxication and only passing references to the evidence of speeding. At one point the district court states that all witnesses, except a discredited witness, testified that the decedent had been traveling at least 45 miles an hour at the time of the accident.[7] While a traffic sign posted some distance west of the Townsend plant recommended a speed of 40 miles an hour, the regulation speed limit was 50 miles an hour.[8] In addition, there is no clear indication in the district court's opinion whether decedent's conduct, if contributorily negligent, was a proximate cause of the accident. Fed.R.Civ. P. 52(a) requires a specific finding of fact by the district court. No such finding has been made in regard to the evidence of plaintiff's contributory negligence.

▮ Furthermore, the record does not establish as a matter of law the existence of contributory negligence. The witnesses at the trial offered conflicting estimates of decedent's speed. Some of these witnesses testified as experts and

---

7. The district court opinion also states that 60 miles an hour would be an estimate of decedent's speed which would be "in the neighborhood of the several estimates of the speed of the Wise automobile that were made at trial." The range of speed estimates made at the trial was from a low of 20 miles an hour to a high of 75 miles an hour. The 60 miles an hour estimate by the trial court was made in reference to the court's calculation of the distance Wise's vehicle was from the Appellee's truck when Harrington began to pull out. The district court rejected Harrington's testimony that the approaching vehicle along Route 24 was one-half mile away. If this estimate of distance were correct, Wise's vehicle would have to have been traveling at a speed of 120 miles an hour to reach the Townsend plant in 15 seconds. Thus, the district court concluded that in order for Harrington's es-timate of 10 to 15 seconds of time in which it took the Wise vehicle to reach the Townsend plant to be correct, Harrington's estimate of the distance the Wise car was from the Townsend plant must have been in error and should more realistically have been one-quarter of a mile. Given the wide divergence of evidence concerning the speed of the Wise vehicle, we consider an explicit finding by the trial court of the speed at which Wise's vehicle was traveling absolutely necessary in order to make a proper evaluation of the evidence supporting such a finding.

8. 21 Del.C. § 4169(a)(2)(a). We make no determination concerning the effect of a suggested safe speed on the question of the negligence of a person found to have exceeded the suggested safe speed. See 21 Del.C. § 4169(b).

based their estimates on the length of skid marks left by decedent's car, the damage to the vehicles involved and other factors. Other witnesses were in the area of the Townsend plant at the time of the accident and based their opinion on estimates of the speed of decedent's car a few moments before the accident. No witness, however, actually saw the accident occur. Likewise, the evidence concerning intoxication was not undisputed. The quantity of alcohol consumed, the time when the alcohol was consumed, whether decedent had consumed food before having alcohol are all factors which the trial court must consider in the first instance. The question of contributory negligence will depend upon the probative value the trial court gives these factors. It is not our province to make such determinations.

Since we are remanding this case to the district court and there is a possibility of a new trial, we will consider Appellant's challenge to the court's allowance of testimony by an expert for Appellee.[9] The state trooper who had investigated the accident was permitted to testify as an expert witness for Appellee. The trooper opined that the decedent was traveling at a speed of 75 miles an hour just prior to application of the car brakes. The opinion of decedent's speed was based on the length of the skid marks left by decedent's car, damage done to the vehicles involved, distance traveled by decedent's car after impact and the statement of witnesses. It was established by Appellee that the trooper had been on the police force at the time of the accident for three and one-half years during which time he was assigned to the Traffic Division and had investigated four or five accidents a week. In addition, the trooper had 60 hours of advance accident training at the Delaware State Police Training Academy and had been instructed about the proper manner of examining damage to vehicles, location of damage to vehicles, determining points of impact and learning about skid marks.

Appellant does not question that the subject matter about which the trooper testified is an area susceptible to testimony by an expert—the area testified to is beyond the ken of the average layman. See 7 Wigmore, Evidence §§ 1923, 1925 (3rd ed. 1940); McCormick, Evidence § 13 (2d ed. 1972). Nor does Appellant challenge as hearsay the table relied upon by the trooper for his estimates of speed as correlated to the length of skid marks and the co-efficient of friction of the roadway upon which the accident occurred. *Compare* Jamison v. Kline, 454 F.2d 1256 (3 Cir. 1972). Rather, the question before us arises from Appellant's challenge to the qualifications of the trooper to testify in regard to decedent's speed at the time of braking.[10]

On cross-examination Appellant demonstrated that the trooper could not give estimates of speed without the use of a table correlating speed with the length of skid marks and the co-efficient of friction of the roadway. Nor was the trooper familiar with the concept of the co-efficient of friction and its relevance to determining speed from skid marks. In addition, the trooper could not estimate the speed of a car leaving 96 feet of skid marks when there had been no impact with another object, did not know whether the table took into consideration four wheels skidding equally or only one wheel skidding and stated that he took into consideration in his estimate only the length of the longest skid mark.

■ The generally accepted rule which is followed by Delaware is that

9. Whether in the light of this Opinion the district court grants a new trial or makes further findings based upon the present record is a determination for the district court.

10. The general admissibility of expert testimony on the question of speed estimates was expressly left open by the Delaware Supreme Court in Fioretti v. State, 245 A.2d 170 (Del.Supreme Ct.1968). *See also,* 29 A.L.R.3d 248.

the qualifications of an expert witness shall be determined by the trial judge. *Cf.* Robelen Piano Company v. DiFonzo, 3 Storey 346, 169 A.2d 240 (Del.Supreme Ct.1961); South Atlantic S. S. Co. of Delaware v. Munkacsy, 7 W.W. Harr. 580, 187 A. 600 (Del.Supreme Ct. 1936).[11] Such rule has been articulated by this court on a number of occasions. *See* Hickey v. United States, 208 F.2d 269, 278 (3 Cir. 1953), cert. denied, 347 U.S. 919, 74 S.Ct. 519, 98 L.Ed. 1074 (1954); Trowbridge v. Abrasive Co. of Philadelphia, 190 F.2d 825, 829 (3 Cir. 1951).

■ We cannot say that the trial court was in error in allowing the trooper to testify with respect to decedent's speed. The trooper's opinion was not based simply on the length of the skid mark, but was also based on the damage to the vehicles involved, the location of the vehicles after impact and the areas of impact. The trooper testified from experience gained in this type of work over a three-year period and from the knowledge he gained at the Police Academy. Although Appellant's cross-examination demonstrated the trooper's weaknesses as an expert, these matters properly affect the weight the trial court should give this testimony. There has been no showing by Appellant of a complete lack of probative value which would constitute manifest abuse of discretion in allowing the trooper's testimony in evidence.[12]

The judgment of the district court will be vacated and this case will be remanded with instructions to proceed in accordance with our opinion.

11. We look to Delaware law to determine the admissibility of the trooper's testimony as an expert witness since we are not aware of any federal statute or equity rule in favor of admissibility. Fed.R.Civ.P. 43(a); Galbraith v. Hartford Fire Insurance Co., 464 F.2d 225, 227 n. 1 (3 Cir. 1972); 5 Moore's Federal Practice ¶ 43.02 [4], at 1318 (2d ed. 1974).

12. Wigmore would not allow for appellate review at all of the question of the qualifications of an expert witness. 2 Wigmore, Evidence § 561 (3d ed. 1940).