Jean G. BURNS, Plaintiff,

v.

**DELAWARE COCA-COLA BOTTLING COM-PANY, a corporation of the State of Delaware, Defendant.**

Superior Court of Delaware.

New Castle.

Nov. 10, 1966.

Jay H. Conner, Keith & Koffenberger, Wilmington, for plaintiff.

William F. Taylor, Young, Conaway, Stargatt & Taylor, Wilmington, for defendant.

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR A NEW TRIAL

QUILLEN, Judge:

This was an action for damages for personal injuries and anxiety caused by the presence of a foreign substance in a bottle of coca cola purchased from a coca cola dispensing machine. The beverage was partially consumed by the plaintiff and the claim for damages arises from such consumption. A jury verdict was returned in the amount of Three Thousand Dollars ($3,000.).

While at work in the Public Building in Wilmington, the plaintiff poured some of the contents of the bottle into a coffee cup and became aware of the foreign substance in the beverage by a bitter taste and visual inspection after some consumption. The foreign substance was described in varying ways, all very unpleasant, but it was never specifically identified. Insofar as damages are concerned, the plaintiff testified that she felt nervous, apprehensive and nauseated. She did not vomit. While she did take certain steps to relieve her discomfort, she remained at her office until the normal closing time. Thereafter, since she still was not feeling right, she went to her family doctor. The doctor examined her, described her condition as hysterical, noted her high blood pressure and pulse rate, and directed her to the hospital. At the emergency room of the hospital, she underwent a stomach pump procedure which was generally described by her doctor as being very painful. She missed a couple days of work and saw her own doctor several more times. She stated that she had completely recovered her physical health by the end of the week following the incident. There was, however, some evidence of lingering anxiety, particularly insofar as the plaintiff's consumption of bottled beverages was concerned. Her doctor testified further in this regard that the plaintiff had some apprehension some two or three months after the incident.

The defendant has moved to set aside the judgment and for a new trial pursuant to the provisions of Rule 59, Del.C.Ann. on the ground that the verdict is excessive as a matter of law.

Preliminarily, it should be noted that this Court interferes with the verdict of the jury only with great reluctance. Our Judges have expressed great concern over the effect of such interference on the essential position trial juries occupy in our judicial system. Taylor v. Riggin, 1 Terry 149, 7 A.2d 903 (Super.Ct.1939); Lacey v. Beck, 2 Storey 526, 161 A.2d 579 (Super.Ct.1960). It is, therefore, appropriate that the Court set forth in some detail its understanding of the law as to the Court's function in reviewing verdicts claimed to be excessive.

The plaintiff places great weight on Judge Terry's opinion in the *Taylor* case,

supra. In particular, Judge Terry reviewed the case law at 7 A.2d 906:

"There appear to be two distinct lines of thought in cases of this type. Some Courts seem to infer or imply prejudice, passion, or sympathy or an unfair determination on the part of the jury in arriving at the verdict and broadly state that the conscience of the Court subsequently is shocked, and the amount so ascertained must be reduced.

On the other hand, there is a different line of thought, it being that the verdict of the jury should not be disturbed unless it is apparent to the Court that the jury's verdict was based upon prejudice, passion, or sympathy or that the jury did not arrive at its verdict in the proper manner."

Judge Terry concluded that "the Court should not disturb the jury's verdict, provided no affirmative facts are established by the defendant that the jury did not follow the instructions of the Court in its deliberations and come to an unbiased and fair conclusion, free of prejudice, passion, or sympathy".

 The plaintiff in her brief suggests that the *Taylor* case holds that the defendant has the burden of showing particular jury misconduct by affirmative facts before the verdict may be set aside. I do not understand it to be the law, however, that the defendant must show by evidence a specific error on the part of the jury in its deliberations. That is, I do not understand it to be the law that the defendant must show at what point and in what way the jury erred while deliberating. Rather, the Court may set aside a jury verdict when the figure "is so clearly excessive as to indicate that it was the result of passion, prejudice, partiality or corruption". Lacey v. Beck, supra, at 161 A.2d 580.

Moreover, I do not think that the holding of the *Taylor* case goes so far as to support the position suggested by the plaintiff. Rather, it seems to me that the Court

merely held that the standard of proof required by the second line of cases indicated above was not met, and that, as to the standard set forth in the first line of cases, on the particular facts there before the Court, the conscience of the Court was not shocked. In particular, Judge Terry said the following at 7 A.2d 906:

"Since the conduct or the attitude of the jury in arriving at the verdict has not been attacked and without a showing on the part of the defendant that passion, sympathy, nor prejudice entered into the deliberations of the jury, I cannot bring myself within that scope of reasoning of other Courts that have held verdicts in the amount of $3625 or thereabouts, representing damages for the wrongful death of an infant of the age, health, mind, and intelligence such as the Deceased, should shock the conscience of the Court."

Thus, the holding of the *Taylor* case, in my opinion, does not stand for the proposition that the Court can never infer or imply prejudice, passion, sympathy or an unfair determination from the size of the verdict alone. It was not necessary for Judge Terry to reach that question because he concluded that the particular verdict on the particular facts was not such as to shock the conscience of the Court.

██ My interpretation of the *Taylor* decision gains support from the recent comments of our Supreme Court in Larrimore v. Homeopathic Hospital Association of Delaware, 4 Storey 449, 181 A.2d 573, 578 (1962). In that case, our highest Court recognized that the granting of a new trial on the ground that the verdict is excessive has a lengthy judicial history in this Court. See 1 Wooley on Delaware Practice § 736 and the cases therein cited. One of the cases cited both by the Supreme Court in the *Larrimore* case and by Wooley is Winkler v. Philadelphia and Reading Railway Co., 4 Penn. 80, 87–88, 53 A. 90 (Super.Ct.1902). In that case it is clear from the official reporter that the

motion for a new trial, which was favorably viewed by the Court, was based solely on the amount of the award. See also Shea v. Kerr, 1 Penn. 198, 40 A. 241, 242 (Super.Ct.1898). The lower Court decision in the *Larrimore* case set aside the verdict as "grossly excessive". Larrimore v. Homeopathic Hospital Association of Delaware, 4 Storey 235, 176 A.2d 362, 368–371 (Super.Ct.1961). Judge Stiftel based his decision on an implication from the size of the verdict. He said that the verdict "must have resulted from the jury's failure to understand the nature of the case and the actual damages suffered or that verdict was the result of passion, prejudice, whim or caprice". See also Bennett v. Barber, 7 Terry 132, 79 A.2d 363, 365–366 (Sup.Ct.1951) and Williams v. Chittick, 1 Storey 122, 139 A.2d 375 (Sup.Ct.1958) which discuss the role of the Appellate Court in reviewing excessive verdicts and indicate that in extraordinary cases the Appellate Court can set aside a jury verdict based solely on the size of the award and the implications therefrom. I conclude that the law of this State permits the Court to set aside jury verdicts as excessive based on the amount of the award and the implications from the amount.

■■ Various standards have been suggested by the Courts over the years in dealing with the problem of excessive verdicts. Thus it has been said that the verdict must be "beyond all measure unreasonable and outrageous", "grossly excessive as to shock the Court's sense of justice" or "clearly * * * in error". When there is any margin for a reasonable difference of opinion in the matter, the Court should always yield to the verdict of the jury. Lacey v. Beck, supra, at 161 A.2d 581. In short, interference with the verdict of a jury is a serious matter and should be recognized as such.

But notwithstanding the great hesitancy of the Court to review the amount of a jury verdict, it is an obligation of this Court to do so in certain rare cases. As Judge Stiftel said in the *Larrimore* case at 176 A.2d 369, "the trial court has responsibilities, which it must assume, upon its recognition that there has been a recognizable injustice in the rendering of a verdict".

■ I am aware of the difficulty in labeling a three thousand dollar verdict excessive given the current value of the dollar. But the dollar figure cannot be considered in the abstract. It must be considered in the context of the evidence of record. That evidence shows extremely little damage in this case. The total amount paid by the plaintiff for medical bills was $38.00 to her personal doctor and $6.00 to the Delaware Hospital. The only pain of any consequence which the plaintiff suffered was having to undergo stomach pump treatment at the hospital, including the swallowing of a tube, which was described by her doctor as excruciating and painful. While the experience of drinking a polluted beverage is certainly an unpleasant one, it is not vastly different than numerous unpleasant experiences that many people undergo as part of the price of living in human society. It can hardly be considered unusual harm. Any lingering mental anguish, including a continued disinclination on the part of the plaintiff to drink bottled beverages, must be considered minimal.

In short, while the amount of the award viewed in the abstract is hardly shocking, when it is tied to the facts of the case and the mildness of the injury suffered by the plaintiff, it does become shocking. To permit such verdicts to stand can only corrupt a legal process which must always have justice as its standard and which must never become a mere game of chance.

The verdict in the amount of $3,000 is so excessive as to shock the Court. Since I reach this conclusion based on the size of the verdict alone, I will not speculate for the reason for the excessive verdict. Suffice it to say that, even granting the

plaintiff every reasonable factual inference from the record, the evidence, in my opinion, justifies at an absolute maximum no more than $1500. Consequently, the verdict must be set aside.

■ Having reached the conclusion that the verdict cannot stand, the Court must turn its attention to the remedy. The defendant has requested a new trial of the whole case, including both the issues of liability and damages. I see no basis for allowing a new trial as to liability. The issues in the case were distinct and the jury was instructed clearly to consider damages only after it was determined that the plaintiff was entitled to recover. The whole thrust of the defendant's case was on the liability question and there is no reason to believe that the defendant did not receive a fair hearing as to that question. Rule 59, which permits partial new trials, was intended to prevent the retrial of any issue already properly decided and to limit any new trial only to those issues which were incorrectly decided. Larrimore v. Homeopathic Hospital Association of Delaware, supra, at 176 A.2d 371.

The most sensible practice in situations like the current one is the practice of remittitur whereby the plaintiff is given the option of a new trial or agreeing to a reduction of the verdict to an amount fixed or approved by the Court. There is a long history of such practice in our State. 1 Wooley, supra, § 736; Burton's Executor v. Warrington, 1 Houst. 148 (Super.Ct. 1855); Benson v. Mayor and Council of Wilmington, 9 Houst. 359, 32 A. 1047 (Super.Ct.1893); Winkler v. Philadelphia and Reading Railway Co., supra; Spahn v. Peoples Railway Co., 3 Boyce 302, 92 A. 727, 731–732 (Super.Ct.1912); Williamson v. Wilmington Housing Authority, 1657 C.A. 1960, (unreported letter opinion of Judge Christie dated February 15, 1966). See also Rudnick v. Jacobs, 7 W.W.Harr. 348, 183 A. 508 (Super.Ct.1936), aff'd 9 W.W.Harr. 169, 197 A. 381 (Sup.Ct.1938).

In regard to excessive verdicts and remittitur, one further point is worthy of comment. The plaintiff argues that, since the damages in this case are largely for anxiety, pain and suffering, the court should not set aside the verdict or apply remittitur since these elements of damage are peculiarly within the jury's province. The Court notes that there is some discussion in at least one opinion of our Supreme Court which lends support to the plaintiff's argument. Rudnick v. Jacobs, supra, at 197 A. 384.

Certainly the Court is more easily justified in interfering with the verdict of the jury in cases where damages can be definitely demonstrated by mathematical computation and thus the error of the verdict can be more easily shown to be manifest. But the Supreme Court in *Rudnick* expressly withheld an opinion in the case where damages were incapable of mathematical computation, even in the additur context, which traditionally has been viewed as a more dangerous encroachment upon the province of the jury than remittitur.

■ The past history of this Court indicates that, when compelled by the circumstances of the case, this Court will interfere with an excessive jury verdict notwithstanding the fact that pain and suffering are elements of damage. Winkler v. Philadelphia and Reading Railway Co., supra; Spahn v. Peoples Railway Co., supra; Larrimore v. Homeopathic Hospital Association of Delaware, supra. Indeed the *Larrimore* decision at 176 A.2d 369 makes the very point that "judicial control over the size of verdicts is a safeguard against abuse in cases where the plaintiff's essential grievance is of an intangible sort".

Furthermore, this Court has, when it was deemed advisable, applied the remittitur doctrine to damage verdicts which included pain and suffering. Winkler v. Philadelphia and Reading Railway Co., supra; Spahn v. Peoples Railway Co., supra.

I choose to follow the remittitur practice as it has been developed in this Court for over 100 years. As indicated above, I conclude that the evidence justifies a verdict of no more than $1500 for the plaintiff. If the plaintiff will not agree to a reduction in the verdict to that amount, a new trial will be granted solely on the question of damages.

The plaintiff is directed to designate within 10 days whether or not she will agree to a reduction of the verdict to that sum of $1500. If the plaintiff so agrees, an order to that effect will be entered by the Court. In the absence of such an agreement, a new trial will be ordered on the question of damages only.

It is so ordered.