Betty A. STOREY, Defendant Below, Appellant,

v.

Charles W. CASTNER, Jr. and Carol Castner, his wife, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Nov. 28, 1973.

Stanley C. Lowicki of O'Donnell, Hughes & Lowicki, Wilmington, for appellant.

George F. Gardner, III, of Schmittinger & Rodriguez, Dover, for appellees.

HERRMANN, C. J., CAREY, J., and BIFFERATO, Judge, sitting.

BIFFERATO, Judge:

In this appeal [1] from Superior Court, the appellant seeks the reversal of a judgment in favor of the appellee entered after a jury trial in an action for damages arising out of an automobile accident. Using a broad approach on appeal, appellant, defendant below, contends that the Trial Court made numerous errors in the admission of evidence, in directing a verdict in favor of the appellee, plaintiff below, and in refusing to reduce the award of the jury.

The facts surrounding the accident are essentially undisputed. On January 22, 1969, at approximately one o'clock in the afternoon, the plaintiff, Charles Castner, was driving his car North on Route 13 when he approached the intersection of Route 13 and Court Street on a green light. At this same time, the defendant, Betty Storey, was driving her car west on Court Street and approaching the intersection on a red light. Plaintiff, then traveling at a speed of 40 or 50 miles per hour, first noticed the Storey vehicle when his car was about five or six car lengths from the intersection. The Storey vehicle was traveling at a speed of 20 or 25 miles per hour. Plaintiff immediately took his foot off the accelerator and, when it became apparent to him that defendant's car was going to proceed into the intersection against a red light and that a collision was imminent, he forcefully applied his brakes but to no avail.

1. Appellee, plaintiff below, raised the question of whether or not appellant, defendant below, had filed and perfected a timely appeal. By Opinion dated January 18, 1973, found in 306 A.2d 732, this Court found that the appeal was in fact timely.

The uncontroverted facts clearly indicate that Castner was the favored driver and that Mrs. Storey unlawfully entered the intersection against a red light. Although defendant concedes that her own negligence was a proximate cause of the ensuing collision, she nevertheless argues that plaintiff was contributorily negligent. Specifically, defendant argues that there were significant conflicts in the testimony as to speed, proper control, proper lookout and warning such as to create a jury question on the issue of contributory negligence, and that it was therefore error for the Trial Court to direct a verdict on that issue.

■ We find that the Trial Court did not err in directing a verdict against defendant on defendant's defense of contributory negligence. No doubt, the question of contributory negligence is ordinarily one for the finder of fact. But where the facts permit reasonable persons to draw from them but one inference, that the plaintiff clearly was or was not negligent, the question becomes one for decision as a matter of law. Wootten v. Kiger, Del. Supr., 226 A.2d 238 (1967).

■ The instant case is within the scope of our earlier decision in Williams v. Chittick, Del.Supr., 139 A.2d 375 (1958), wherein it was held that a favored driver on a dual highway has a right to assume that a motorist who approaches an intersection on a less-favored street, will not enter thereon until he can do so with reasonable safety. A favored driver, therefore, need not abate the speed of his car or take decisive evasive action until he is placed upon notice that the less-favored driver has entered or is about to enter the intersection unlawfully.

Accordingly, the Trial Court was correct in determining that the relevant issue on plaintiff's directed verdict motion was whether there was sufficient notice to take the present case out of Williams. The Trial Court was also correct in ruling that no significant conflict in the facts existed

on this question. Admittedly, there is some conflict between the testimony of plaintiff and the testimony of the investigating officer as to whether the plaintiff was traveling at 50 or 40 miles per hour when he first observed the Storey vehicle. But at either speed, plaintiff was traveling at a lawful speed for a dual highway. Moreover, while plaintiff admitted having reduced his speed by 10 miles per hour "to appraise the situation", it was not until he was but two or three car lengths from the intersection that it became apparent to him that defendant's vehicle was not going to stop. The crucial point here is not so much the speed of the Castner vehicle but, instead, the time when Castner was put on notice or should reasonably have been put on notice of the impending danger. The speed of Castner's car is then significant for the limited purpose of determining whether plaintiff had sufficient time, considering speed and distance, to take reasonable steps to avert the accident.

Defendant apparently argues that plaintiff should have taken decisive evasive action at an earlier point in time but that he failed to do so. This argument is based on the misconception that plaintiff was legally obligated to take evasive measures upon first noticing the Storey vehicle. The law, however, does not require that a motorist exercise such a high degree of diligence under the circumstances present here. As we said in Williams, supra, at 379, "the purpose of through highways is to accelerate the flow of traffic thereon by permitting travelers to proceed, within lawful speed limits, without interruption. . . ."

Not only was plaintiff, a motorist on a dual highway, not required to reduce his speed upon approaching the intersection, but he was also not obligated to take evasive action of any sort until it became apparent to him by maintaining a proper lookout that defendant's car was going to enter the intersection. Williams v. Chittick, supra; Stearrett v. Syva, Del.Super., 285 A.2d 816 (1971). Here, plaintiff, by

exercising a proper lookout, noticed Mrs. Storey's car for the first time while it was on Court Street and when his own vehicle was five or six car lengths from the intersection. Plaintiff, however, was not put on notice of the impending danger until a time subsequent to this time, i. e., when plaintiff's car was but two or three car lengths from the intersection and defendant's car was entering into the intersection.

■ In this regard, it is significant to note that Castner, the favored driver on a dual highway, was approaching an intersection on a green light. A motorist who enters an intersection with a green light in his favor may not be held to the same standard of care as the motorist who enters an uncontrolled intersection or an intersection controlled merely by a warning device. Smith v. United News Company, 413 Pa. 243, 196 A.2d 302, 305 (1964).

■ Our Circuit Court, applying Delaware law, has recognized that a Trial Court's failure to adopt a lesser standard of care for a motorist proceeding on a highway with a green light in his favor constitutes error. See Nolan v. Sullivan, 372 F.2d 776, 779–780 (3rd Cir.1967) also quoting from and noting its approval of Smith v. United News Company, supra. We express our approval of the *Nolan* case in this regard: in the absence of circumstances which put a reasonable man on notice of impending danger, a driver on a dual highway with a green light in his favor has a right to assume that he could traverse the intersection safely and that cross traffic would stop in obedience to the red light. Nolan v. Sullivan, supra, at 780. This Court has heretofore recognized that a higher standard of care and diligence is required of favored motorists who enter an uncontrolled intersection, see Wootten v. Kiger, Del.Supr., 226 A.2d 238 (1967), or who enter an intersection regulated by a cautionary signal. See Carnes v. Winslow, Del.Super., 4 Storey 536, 182 A.2d 19, 21 (1962). In such cases, a motorist is under a duty to proceed more warily. Under the present circumstances, a comparable duty did not exist.

It is clear that plaintiff should not have been placed in immediate appreciation of the impending danger when he first noticed the Storey vehicle. He had the right to assume at that time that Mrs. Storey would stop her car in compliance with the red light against her. Mrs. Storey's vehicle was not traveling at an excessive rate of speed, but instead was within a lawful speed. Plaintiff, therefore, was not put on notice of the impending danger until such time as defendant's car very closely neared or began entering the intersection. Although plaintiff took some evasive action at this time, the testimony of the investigating officer confirms that there was insufficient time remaining to avoid the collision.

We hold therefore that there is no significant conflict in the testimony of the plaintiff, the defendant, and the investigating officer such as to create a jury question on the issue of contributory negligence. Accordingly, the Trial Court correctly directed a verdict on the question of liability in favor of the plaintiff.

Defendant's next several substantial grounds for appeal relate to the question of damages. Defendant argues that the Trial Court erred in allowing two of plaintiff's witnesses, Rhoades and Bowhall, to testify as to the value of plaintiff's car when neither witness personally examined the car immediately prior to the accident.

■ It has long been the rule in Delaware that the measure of damages in cases of this character is the value of the vehicle damaged immediately before and immediately after the accident. Alber v. Wise, Del.Supr., 2 Storey 126, 166 A.2d 141, 143 (1960); Teitsworth v. Kempski, Del.Supr., 11 Terry 234, 127 A.2d 237, 238 (1956). When it is not feasible to repair a damaged automobile, as is the case under the instant facts, the measure of damages is the value of the car just before the accident and its

salvage value immediately after the accident. Estimates of such values must necessarily be produced directly from an expert witness. Stuart v. Rizzo, Del.Supr., 242 A.2d 477, 480 (1968), and in the instant case both Rhoades and Bowhall were qualified as experts to testify as to the value of the plaintiff's vehicle.

■ Moreover, we find no merit to defendant's contention that, not having personally examined the car immediately prior to the accident, neither witness was qualified to render an estimate, and that reference to the book value of similar cars was an insufficient substitute. It has been recognized that such estimates of values may be brought out in hypothetical questions, and the witness may testify from trade books setting forth values. Blashfield, Automobile Law and Practice, § 480.3. See, also, Cincinnati St. R. Co. v. Waterman, 50 Ohio App. 380, 198 N.E. 494 (1935). Moreover, a witness, otherwise qualified as an expert in the particular field, may be competent to give estimates as to the value of a damaged car even though he never actually saw the car. Rodgers v. Studebaker Sales Co., 102 Pa. Super. 402, 157 A. 6 (1931).

■ Under the instant circumstances, the book value of automobiles of the same class as plaintiff's automobile was admissible for two additional reasons. First, the book value estimates as testified to by Rhoades and Bowhall were based upon automobiles in average condition of the same class as that of plaintiff's automobile. Thus, it was incumbent upon plaintiff to show by some other evidence that his automobile was at least in "average condition" to make the book value estimate pertinent to his case. This, the plaintiff did, by a proffer of evidence consisting of three receipts for repairs which had been made on his car prior to the accident. The Trial

Court properly received such evidence appropriately charging the jury that the receipts were "merely offered for the limited purpose to show what condition the car was kept in." Secondly, this Court recognizes that it may be impractical, if not impossible, to ascertain the true value of an automobile immediately prior to the accident, and that book value estimates may be the only method available to plaintiff to prove such value. Compare Alber v. Wise, supra, 166 A.2d at 144.

Therefore, we find that the Trial Court did not err either by allowing the testimony of Rhoades and Bowhall or by receiving into evidence, under the appropriate instruction, the receipts for repairs made on plaintiff's car prior to the accident.

Defendant next contends that the Trial Court committed reversible error by admitting into evidence the deposition of plaintiff's treating physician, Dr. Winters. Specifically, defendant argues that the doctor's final diagnosis was vague, not current and based upon an inaccurate case history of the plaintiff.[2]

■ Indeed, the evidence reflects that Dr. Winters did not receive a complete case history of the plaintiff. It was not known to Dr. Winters during his treatment of plaintiff that plaintiff had suffered prior injuries to his collarbone and back. Also, plaintiff misstated to Dr. Winters a particular circumstance of the collision. It is likewise true that the doctor's opinion as to the permanency of plaintiff's injury resulted from examination and treatment of plaintiff that terminated some seven and one-half months prior to trial.

These relevant facts were disclosed to the jury at trial. Defense counsel could properly argue these circumstances to the jury in his summation. We see such matters, however, as going to the weight to be accorded to the medical opinion of the doc-

2. Defendant does not challenge the procedural aspect of the Trial Court's decision to admit the deposition into evidence. Superior Court Civil Rule 32 permits the use of a deposition where the party offering the deposition cannot procure the personal appearance of the witness. Counsel for defendant conceded to the unavailability of Dr. Winters at trial.

tor, and not to the question of the admissibility of his deposition. Therefore, the Trial Court did not err in admitting into evidence the deposition of Dr. Winters.

 Defendant's contention that the doctor's final diagnosis was vague is relevant to her next substantial ground for appeal, i. e., that a $25,000 verdict was excessive under the present facts. In this state, a jury's verdict is presumed to be correct and just. Lacey v. Beck, Del.Super., 2 Storey 526, 161 A.2d 579 (1960). A verdict will not be disturbed as excessive unless it is so clear as to indicate that it was the result of passion, prejudice, partiality, or corruption; or that it was manifestly the result of disregard of the evidence or applicable rules of law. Riegel v. Aastad, Del.Supr., 272 A.2d 715, 717–718 (1970). Otherwise stated: A verdict should not be set aside unless it is so grossly excessive as to shock the Court's conscience and sense of justice; and unless the injustice of allowing the verdict to stand is clear. Riegel v. Aastad, supra, at 718; Bennett v. Barber, Del.Supr., 7 Terry 132, 79 A.2d 363 (1951). Moreover, a verdict will not be set aside simply because it is excessive in the mind of the Court, but only where, under the attendant facts, a grossly excessive verdict is clearly manifest. Lacey v. Beck, supra, 161 A.2d at 581. Recognizing that it would be remiss in its duties to invade an area within the exclusive province of the jury, the courts will yield to the verdict of the jury where any margin for reasonable difference of opinion exists in the matter of a verdict. Burns v. Delaware Coca-Cola Bottling Company, Del. Super., 224 A.2d 255, 258 (1966).

 Defendant argues that Dr. Winters' final diagnosis was vague on such matters as the permanency of plaintiff's injury, and on the matter of future pain and suffering. Accordingly, defendant concludes that the jury was required to speculate on such matters and that the $25,000 verdict was reached as a result of such speculation. We do not agree. Dr.

Winters' testimony disclosed that plaintiff suffered a permanent injury in that there will always be "some mild restriction in his neck and an occasional acute flare-up." Dr. Winters further testified that the injury to plaintiff's neck was causally related to the accident, that originally it was quite stiff and painful, but that plaintiff gradually improved throughout treatment to a point "where he has this mild restriction which is really of no consequence." Dr. Winters explained the "mild restriction" as not impairing the neck function but, nevertheless, "disabling in the essence of a full working joint." Dr. Winters prescribed traction to alleviate the stiffness and pain in plaintiff's neck.

Plaintiff testified that he used and continues to use a home traction kit, that he used traction on a daily basis for the first seven or eight months after having it prescribed to him, and that he presently uses it "a couple of times a week." Describing the present status of the injury, plaintiff testified as follows:

"Q. What do you mean 'growing on you'?

"A. Well, it's always sitting there like part of a—like the start of a toothache, like if I am driving for a long period of time and you keep your head straight, or like sitting over there and you don't really move around that much, it will start to stiffen up."

Plaintiff continues to have a problem of neck stiffening and pain, depending upon weather conditions and type of work or activity engaged in. Undoubtedly, this particular effect of the injury that plaintiff received as a result of the accident is, reasonably construing all the medical evidence, what is meant by the "acute flare-up" that Dr. Winters testified was permanent in nature. Plaintiff also testified at trial about a present inability to turn his neck to the left to a point parallel with his shoulders.

We therefore agree with the Trial Court's conclusion that, under the applica-

ble law, the verdict was not excessive. It is clear from the evidence that plaintiff suffered a permanent injury that will result in occasional pain and stiffness in his neck for the duration of his life. The life expectancy of the plaintiff at the time of trial was 35 years. The jury determined, after considering all the evidence, that a verdict of $25,000 was a reasonable sum to compensate plaintiff for his property loss, his medical expenses, his permanent injury, and his past, present, and future pain and suffering. We must not substitute our own judgment for that of the jurors, for to do so would violate plaintiff's constitutional privilege to have the fair verdict of the jury, and not the fair judgment of the Court. Absent extreme or exceptional circumstances, the Court should always yield to the verdict of the jury rather than to the contrary. Lacey v. Beck, supra, 161 A.2d at 581.

Therefore, in examining all the evidence in relation to the jury's verdict, we cannot conclude that the jury acted with undue passion, prejudice or partiality in this case, nor is the amount of the verdict clearly so grossly excessive as to shock our judicial conscience.

Most of the defendant's remaining grounds for appeal merit summary resolution. With respect to defendant's contention that the Trial Court improperly instructed the jury on the question of damages, we find that, although somewhat deficient on such concepts as proximate cause and burden of proof, the Court's charge was such as to enable the jury to intelligently perform its duty in returning a verdict. Some inaccuracies and inaptness in statement are to be expected in any charge; all that is required is that such statements be reasonably informative and not misleading, judged by common practices and standards of verbal communication. Baker v. Reid, Del.Supr., 5 Terry 112, 57 A.2d 103, 109 (1947). Furthermore, the various other instructions which defendant contends were denied to her were either inappropriate under the cir-

cumstances of the case or within the discretion of the Trial Judge to deny. In any case, such denial did not prejudice defendant so as to constitute reversible error.

We have examined the record below and have considered defendant's arguments on several other matters raised on appeal. We see no substantial merit in any of the other several grounds. We do express our disapproval, however, of the Trial Court's ruling to admit into evidence the cost of a medical report prepared by plaintiff's physician in anticipation of litigation. The cost of obtaining such reports are not recoverable and therefore that part of the doctor's bill which reflected the cost of the medical report was inadmissible. We find, however, that such error was harmless error under the instant circumstances.

The judgment below is affirmed.