IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYRONE ADKINS, | § | |
| | § | No. 580, 2015 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID. 1407011882 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: September 21, 2016
Decided: October 12, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **VAUGHN**, Justices.

**O R D E R**

This 12th day of October 2016, upon consideration of the parties' briefs and the record of the case, it appears that:

1. Tyrone Adkins appeals from a Superior Court jury verdict finding him guilty of three counts of Drug Dealing. He makes two claims on appeal. First, he contends that the trial court gave an improper jury instruction on the chain of custody of illegal drugs. Second, he contends that an *Allen* charge given by the trial court denied him due process by asking the jury to consider factors not in evidence and not properly before it, such as the time and resources of a new trial.

2. On six separate occasions in 2014, Adkins sold heroin to an undercover Delaware State Police Officer, Detective Reynolds, which resulted in two separate indictments and two separate trials. The first trial addressed the first three drug purchases, and a second trial addressed the last three drug purchases. The issues in this appeal arise from the first trial.

3. At trial, Adkins asserted that the police carelessly mishandled the drug evidence after they obtained it in the drug deals. The State called Detective Reynolds, Sergeant Rementer, and an NMS Labs employee to establish chain of custody. Detective Reynolds testified that in each of the three transactions, the drugs were placed in a labeled evidence envelope, sealed with evidence tape that was initialed and dated, and placed in an evidence locker. Sergeant Rementer testified that she assisted Detective Reynolds in packaging the drug evidence and that she followed the same packaging procedure.

4. NMS Labs tested the drugs. The NMS Labs employee testified that she and a second employee received evidence from the police in two sealed cardboard boxes. The evidence in the boxes apparently pertained to a number of different cases. Each box contained an inventory sheet identifying the drugs contained within that box. One of the boxes contained an inventory sheet indicating that it contained the Adkins drugs. However, the Adkins drugs were not in that box. The three Adkins drug envelopes were in the other box, although they were not listed on the inventory for

that box. As they looked at what was before them, the NMS employees realized that the inventory sheets had been placed in the wrong boxes. In other words, the inventory sheet in one box should have been in the other box and vice versa. The employees switched the inventory sheets to the correct box and noted the mix-up in their files. The NMS employee also testified that the police filled out the NMS property receipt and chain of custody forms improperly.

5. Adkins requested a jury instruction on chain of custody. It read as follows:

> The State is obligated to account for its careful custody of the evidence from the moment the State is in receipt of the evidence until trial. The State need not, however, prove beyond all possibility of a doubt the identity of the evidence. The State must prove that the evidence tested was the evidence seized beyond a reasonable doubt. If you determine that the State did not prove beyond a reasonable doubt that the drugs in evidence were seized from the Defendant, you must find the Defendant not guilty.

6. The trial court declined to give the requested instruction and instead gave one that it referred to as being in its "bank of instructions." The instruction stated:

> The State is obligated to account for its careful custody of the evidence from the moment the State is in receipt of the evidence until trial. The State need not, however, prove beyond all possibility of a doubt the identity of the evidence or the improbability of tampering; it need only prove that no tampering occurred.

> In order for you to find the defendant guilty of drug dealing, the State must nevertheless prove, beyond a reasonable doubt, that the drugs introduced into evidence were the drugs seized from the defendant at the time of his arrest.

7. As can be seen, the primary difference between the two instructions is that the instruction given by the trial court includes references to tampering, whereas the one offered by Adkins does not. Adkins objected to the instruction given by the trial court. His contention was that the police were careless in handling the evidence, not that it had been tampered with. He argued that the references to tampering restricted and effectively foreclosed his argument that the State had not proven chain of custody because of its careless handling of the evidence.

8. After fifty minutes of deliberations, the jury sent a note to the trial judge stating that it could not reach a unanimous verdict. The judge sent the jury home for the evening, and gave the jury the following *Allen* charge the next morning:

> Yesterday you deliberated for about an hour before we took our break. Although that may seem like a long time, it is a relatively short period for jury deliberations in view of the serious nature of this case.
>
> This trial has consumed the time, energy, emotions, and resources of the State and the defense. If you should fail to reach or agree upon a verdict, this case will remain open and undecided and must be disposed of at some later time. There appears to be no reason to believe that another trial would not be equally taxing on the resources of all involved, nor does there appear to be any reason to believe that another jury viewing this same evidence would face a less difficult determination.
>
> Since it is your duty to reach a unanimous verdict, if you are able to do so without violating your individual judgment and conscious [sic] I will ask you to resume your deliberation and, in addition to the instruction previously given to you, to consider the following principles in your renewed deliberations.
> . . .

No juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinions of the other jurors or merely for purposes of returning a verdict.

I wish to emphasize by making these remarks the Court is not intending in any way to suggest what your verdict should be. You may conduct your deliberations as you choose, but I would suggest that you now retire to carefully reconsider all the evidence bearing upon the questions before the jury and consider the opinions of all other jurors relating to the evidence in determining whether or not you were able to fulfill your duty to reach a unanimous verdict without violating your individual judgment and conscience.

9. Adkins objected to the instruction and argued that the court gave the jury information it should not consider in weighing the evidence. Specifically, Adkins argued that the court erred by telling the jury that if it did not reach a verdict the case would be retried and that a new trial would result in additional expense to the State, meaning the taxpayers. The objection was overruled. Thereafter, the jury returned a verdict convicting Adkins on all three charges. This appeal followed.

10. A defendant is entitled to an accurate statement of law, but not a particular jury instruction.[1] "A trial court's jury instructions are not a ground for reversal if they are reasonably informative and not misleading when judged by common practices and standards of verbal communication."[2] "In evaluating the propriety of a jury charge, the entire instruction must be considered with no statement to be viewed in a

[1] *Flamer v. State*, 490 A.2d 104, 128 (Del. 1984).
[2] *Burrell v. State*, 953 A.2d 957, 963 (Del. 2008).

vacuum."[3]  The jury instruction must not "undermine[] . . . the jury's ability to 'intelligently perform its duty returning a verdict.'"[4]

11.  In this case, the Superior Court's jury instruction on chain of custody was an accurate statement of law.  When the instruction is viewed as a whole, the language was reasonably informative and not misleading.  We are not persuaded that the instruction confined the jury's consideration of the chain of custody solely to whether tampering had occurred.  The instruction informed the jury that it could not find Adkins guilty unless it concluded beyond a reasonable doubt that the drugs introduced at trial were, in fact, the same drugs sold by Adkins.  The instruction gave Adkins ample room to argue that he should be found not guilty because alleged police carelessness created a reasonable doubt about whether the drugs admitted at trial were the same as the drugs delivered him, and it allowed the jury to accept that argument if it agreed.

12.  Adkins argues that the *Allen* instruction was coercive in violation of the Due Process Clause because (1) it informed the jury additional resources would be consumed if the case were retried; and (2) it informed the jury the State would retry the case, although there was no guarantee that would happen.  Adkins acknowledges, however, that this Court has previously approved an *Allen* charge almost identical to

_____

[3] *Flamer*, 490 A.2d at 128.
[4] *Newnam v. Swetland*, 338 A.2d 560, 562 (Del. 1975) (quoting *Storey v. Castner*, 314 A.2d 187, 194 (Del. 1973)).

the one given here in *Papantinas v. State*.[5]  He asks us to reconsider that decision, and we decline to do so.

NOW, THEREFORE, IT IS THE ORDER of the Court that the final judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

---

[5] 2003 WL 1857548, at *1 (Del. Apr. 8, 2003).